STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

KATHLEEN BURKINSHAW and
MATTHEW BURKINSHAW,

Plaintiffs,

v.

BOSTON SCIENTIFIC CORPORATION
and NATALIE CROMER, individually,

Defendants.

_____

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
26-CVS-26CV026948-590

**COMPLAINT**
**(Jury Trial Demanded)**

| EXHIBIT |
| A |

Plaintiffs, by and through the undersigned counsel, hereby complain of Defendants as follows:

**PARTIES**

1.     At all times relevant, Plaintiffs have been residents of Mecklenburg County, North Carolina.

2.     Plaintiffs are husband and wife, having been married on May 25, 1991.

3.     Upon information and belief, Defendant BOSTON SCIENTIFIC CORPORATION ("BSC") is a Massachusetts entity organized under the laws of the State of Massachusetts, duly authorized to do business and regularly conducting business in the State of North Carolina.

4.     Upon information and belief, Defendant NATALIE CROMER ("CROMER") is a resident of the State of North Carolina and was, at all times relevant herein, employed by Defendant BSC.

**FACTS OF THIS CASE**

5.     Defendant BSC is in the business of marketing, selling and distributing spinal cord stimulator devices.

1

6. Spinal cord stimulators are designed to deliver electrical impulses to the spinal cord to mask or control pain. The devices consist of an impulse generator that is implanted and one or more electrical leads.

7. Plaintiff Kathleen Burkinshaw was diagnosed with complex regional pain syndrome ("CRPS") in 2001.

8. Kathleen was implanted with various spinal cord stimulators for treatment of pain associated with her CRPS between 2008 and 2022.

9. Each of these spinal cord stimulators generally performed as expected and were replaced at the expiration of the expected useful life of the devices.

10. Over the years, as is the normal course, these spinal cord stimulators were reprogrammed or recalibrated from time to time by various representatives of device manufacturers to assist with consistent pain management.

11. Each of these reprogramming or recalibrations were performed safely and effectively.

12. On February 21, 2022, Plaintiff Kathleen Burkinshaw underwent implantation of the latest replacement spinal cord stimulator. This stimulator was manufactured by BSC. This device was implanted by James North, M.D.

13. During the surgery, the spinal cord stimulator was tested intraoperatively and confirmed to be fully functional by a representative from BSC.

14. As per the usual course, and upon information and belief, David Binkney is the BSC representative who was present for the surgery and conducted the interoperative testing of the stimulator implanted in Kathleen.

2

15. Between the surgery on February 21, 2022, and the post-operative follow up appointment on March 7, 2022, the spinal cord stimulator was turned off. This period of time is to allow patients to recover from the pain, inflammation and swelling following implantation surgery before programming the device for continuous pain relief.

16. On March 7, 2022, Plaintiff Kathleen Burkinshaw visited the office of her implanting physician for her post-operative check and for programming and activation of the BSC spinal cord stimulator by a BSC representative.

17. Upon information and belief, Plaintiffs allege that the BSC representative performing the activation and calibration of the device was NATALIE CROMER.

18. Upon information and belief, CROMER is not licensed to practice medicine nor is she certified or trained in any medical specialty or field.

19. Dr. North was not present for the initiation or calibration of the spinal cord stimulator on March 7, 2022.

20. Tragically, when the BSC representative CROMER initiated or calibrated the Boston Scientific spinal cord stimulator unit, she caused an electrical current to be transmitted into Kathleen's body at a higher intensity and for a longer duration than was safe, medically necessary, anticipated, expected or desired.

21. Kathleen was repeatedly and over an extended period time subjected to electrocution and shock.

22. Matthew Burkinshaw, Kathleen's husband, was present in the room and witnessed the horror of his wife writhing on the table as CROMER attempted to determine the source or cause of the shocks.

3

23. Once the electrocution finally ended, the BSC representative CROMER informed Kathleen and Matthew that a key on the keyboard "stuck" which caused the continuous shocking over an extended period of time.

24. The result of the excessive electrical current and electrocution was immediate pain, incapacity, and, ultimately, long-term injury.

25. Prior to March 7, 2022, Kathleen experienced nerve pain related to her CPRS predominantly on her left side. Immediately following the programming error, Kathleen began to experience pain on her right side as well, which has greatly impacted her mobility and her activities of daily living. Kathleen's quality of life has dramatically declined as a result of the electrocution.

**PROCEDURAL BACKGROUND**

26. February 21, 2025, prior to the expiration of the statute of limitations, the parties, by and through agents authorized to act on their behalf, executed an agreement which tolled the statute of limitations for one hundred eighty (180) days, up through and including August 20, 2025. The copy of the executed agreement is attached as Exhibit 1 to this complaint.

27. On August 18, 2025, the parties agreed to extend the tolling agreement for an additional ninety (90) days, through November 18, 2025. See Exhibit 2 attached.

28. On November 17, 2025, the parties again agreed to extend this tolling agreement for an additional six (6) months up through and including May 18, 2026, as evidenced by the documents attached as Exhibit 3 to this complaint.

4

## FIRST CLAIM FOR RELIEF

### (Negligence of Defendant BSC)

29. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-28.

30. Defendant BSC had a duty of care to prudently hire, train and supervise representatives who conduct the initiation, calibration and/or programming of spinal stimulator devices.

31. Defendant BSC is vicariously liable for all acts or omissions of its representatives performed in the scope of their employment. BSC was negligent in the rendering of services to Plaintiff Kathleen Burkinshaw on March 7, 2022, in one or more of the following particulars:

   a. BSC failed to properly train their representatives so that they would possess the requisite knowledge and skills to safely initialize and/or calibrate the BSC spinal stimulator implanted in Kathleen Burkinshaw;

   b. BSC failed to take all necessary precautions, acting by and through their authorized representative, to prevent electrical shock and overexposure to Plaintiff Kathleen Burkinshaw;

   c. BSC failed to provide proper supervision and direction to authorized representatives in the proper maintenance and use of BSC equipment for initialization and/or calibration of the BSC spinal cord stimulator unit implanted in Plaintiff Kathleen Burkinshaw;

   d. BSC and/or its representative failed to inspect the computer unit, including the keyboard, or failed to train its representatives to inspect the equipment prior to use, to ensure safe and proper performance at the time the BSC spinal cord stimulator unit was initialized and/or calibrated on March 7, 2022;

   e. failed to exercise reasonable care and diligence in the performance of duties required of BSC and owed to Plaintiffs in the initialization and/or calibration of the BSC spinal cord stimulator unit on March 7, 2022;

   f. failed to properly oversee and monitor the performance of its representatives, acting as an authorized agent of BSC, in the performance of duties owed to Plaintiffs in the initialization and/or calibration of the BSC spinal cord stimulator unit on March 7, 2022;

5

g.     was negligent in such other ways as may be revealed during discovery;

h.     by the commission or omission of other such acts as discovery may reveal.

32.   Defendant BSC breached one or more of the aforementioned duties of care to Plaintiffs and failed to use reasonable care in the performance of duties owed to the Plaintiffs by engaging in negligent acts and/or omissions described herein.

33.   As a direct and proximate cause of the aforementioned breach(es) of one or more duties of care owed by Defendant BSC, Plaintiffs were injured, immediately and permanently.

34.   As a proximate cause of the negligence of Defendant BSC, as averred in this complaint, Plaintiffs have been damaged, generally and specially, in an amount in excess of $25,000, to be more particularly proven at the trial of this matter.

## SECOND CLAIM FOR RELIEF

### (Negligence of Defendant CROMER)

35.   Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-28.

36.   Defendant CROMER had a duty to exercise reasonable care in the performance of her duties owed to Plaintiff Kathleen Burkinshaw.

37.   CROMER was negligent in the rendering of services to Plaintiff Kathleen Burkinshaw on March 7, 2022, in one or more of the following particulars:

a.   CROMER failed to act with the requisite knowledge and skills to safely initialize and/or calibrate the BSC spinal stimulator implanted in Kathleen Burkinshaw;

b.   CROMER failed to take all necessary precautions to prevent electrical shock and overexposure to Plaintiff Kathleen Burkinshaw;

c.   CROMER failed to exercise proper care in the maintenance and use of BSC equipment for initialization and/or calibration of the BSC spinal cord stimulator unit implanted in Plaintiff Kathleen Burkinshaw;

6

d. CROMER failed to properly inspect the computer unit, including the keyboard to ensure safe and proper performance at the time the BSC spinal cord stimulator unit was initialized and/or calibrated on March 7, 2022;

e. failed to exercise reasonable care and diligence in the performance of duties required of CROMER and owed to Plaintiffs in the initialization and/or calibration of the BSC spinal cord stimulator unit on March 7, 2022;

f. was negligent in such other ways as may be revealed during discovery;

g. by the commission or omission of other such acts as discovery may reveal.

38. Defendant CROMER breached one or more of the aforementioned duties of care to Plaintiffs and failed to use reasonable care in the performance of duties owed to the Plaintiffs by engaging in negligent acts and/or omissions described herein.

39. As a direct and proximate cause of the aforementioned breach(es) of one or more duties of care owed by Defendant CROMER, Plaintiffs were injured, immediately and permanently.

40. As a proximate cause of the negligence of Defendant CROMER, as averred in this complaint, Plaintiffs have been damaged, generally and specially, in an amount in excess of $25,000, to be more particularly proven at the trial of this matter.

## THIRD CLAIM FOR RELIEF

### (Negligent Infliction of Emotional Distress as to both Plaintiffs vs. BSC)

41. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-28.

42. Plaintiffs allege that Defendant BSC was negligent in failing to properly and safely supervise and execute the initialization and/or calibration function for the BSC spinal cord stimulator unit on March 7, 2022.

7

43. Plaintiffs allege that it was reasonably foreseeable that the negligent conduct of Defendant BSC in failing properly and safely supervise and execute the initialization and/or calibration function for the BSC spinal cord stimulator unit on March 7, 2022, would cause injury to Plaintiff Kathleen Burkinshaw and did cause injury and severe emotional distress.

44. Plaintiffs allege that it was reasonably foreseeable that the negligent conduct of Defendant BSC in failing to properly and safely supervise and execute the initialization and/or calibration function for the BSC spinal cord stimulator unit on March 7, 2022 would cause injury to Plaintiff Matthew Burkinshaw because Matthew, the husband of Plaintiff Kathleen Burkinshaw, was present in the room at all times during the procedure and witnessed the extreme physical pain and emotional distress experienced by his wife, resulting in severe emotional distress to Matthew Burkinshaw as well.

45. As a direct and proximate cause of the aforementioned breach(es) of one or more duties of care owed by Defendant BSC, Plaintiffs were damaged.

46. As a proximate cause of the negligence of Defendant BSC, as averred in this complaint, Plaintiffs have been damaged, generally and specially, in an amount in excess of $25,000, to be more particularly proven at the trial of this matter.

### FOURTH CLAIM FOR RELIEF

### (Negligent Infliction of Emotional Distress vs. CROMER)

47. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-28.

48. Plaintiffs allege that Defendant CROMER was negligent in failing to properly and safely execute the initialization and/or calibration function for the BSC spinal cord stimulator unit on March 7, 2022.

8

49. Plaintiffs allege that it was reasonably foreseeable that the negligent conduct of Defendant CROMER in failing to properly and safely execute the initialization and/or calibration function for the BSC spinal cord stimulator unit on March 7, 2022, would cause injury to Plaintiff Kathleen Burkinshaw and did cause injury and severe emotional distress.

50. Plaintiffs allege that it was reasonably foreseeable that the negligent conduct of Defendant CROMER in failing to properly and safely execute the initialization function for the BSC spinal cord stimulator unit on March 7, 2022 would cause injury to Plaintiff Matthew Burkinshaw because Matthew, the husband of Plaintiff Kathleen Burkinshaw, was present in the room at all times during the procedure and witnessed the extreme physical pain and emotional distress experienced by his wife, resulting in severe emotional distress to Matthew Burkinshaw as well.

51. As a direct and proximate cause of the aforementioned breach(es) of one or more duties of care owed by Defendant CROMER, Plaintiffs were damaged.

52. As a proximate cause of the negligence of Defendant CROMER, as averred in this complaint, Plaintiffs have been damaged, generally and specially, in an amount in excess of $25,000, to be more particularly proven at the trial of this matter.

### **FIFTH CLAIM FOR RELIEF**

### **(Loss of Consortium as to Plaintiff Matt Burkinshaw vs. DEFENDANTS)**

53. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1- 28.

54. Plaintiff Matthew Burkinshaw is the husband of Kathleen Burkinshaw and has been married to Kathleen Burkinshaw at all times relevant herein.

55. The Burkinshaws were married on 5/25/1991 and have never lived separately.

9

56. Prior to March 7, 2022, Plaintiff Matthew Burkinshaw and Kathleen Burkinshaw enjoyed the love and affection of each other and reasonably anticipated many more years of conjugal happiness.

57. As a direct result of the negligence of the DEFENDANTS, Plaintiff Kathleen Burkinshaw is no longer able to function in her full capacity as a marriage partner, wife and provider and Plaintiff Matthew Burkinshaw has been deprived of the society, companionship, household services, sexual gratification, and affection of Kathleen Burkinshaw.

58. Additionally, Plaintiff Matthew Burkinshaw has assumed the duties of an attendant care provider to his wife, Plaintiff Kathleen Burkinshaw.

59. As a proximate cause of the negligence of Defendant, as averred in this complaint, Plaintiff Matthew Burkinshaw has been damaged, generally and specially, in an amount in excess of $25,000, to be more particularly proven at the trial of this matter.

### SIXTH CLAIM FOR RELIEF

### (Punitive Damages vs. DEFENDANTS)

60. Plaintiffs hereby incorporate by reference Paragraphs 1 through 28 of this complaint.

61. Plaintiffs allege that the actions of Defendants were reckless, willful, wanton, and exhibited a conscious and intentional disregard for the safety and rights of or constituted gross negligence towards the Plaintiff.

62. Plaintiffs allege that Defendants, in failing to properly inspect and/or operate the equipment used to initialize and/or calibrate the BSC spinal cord stimulator implanted in Plaintiff Kathleen Burkinshaw, were acting with the knowledge that such conduct was potentially dangerous and likely to result in catastrophic injury.

10

63. Defendants' conduct was not merely negligent, but shocking to the conscience, justifying the imposition of punitive damages to punish the Defendant and to deter others.

## COMPLIANCE WITH NORTH CARLINA RULE OF CIVIL

## PROCEDURE 9 (j)

64. Plaintiffs adopt and incorporate herein by reference Paragraphs 1 through 28 of this complaint.

65. As applied, Rule 9 (j) violates Plaintiff's rights to due process, equal protection under the law, trial by jury and access to the courts as guaranteed by Article I, §§ 18, 19 and 25 of the North Carolina Constitution and Amendments VII and XIV of the United States Constitution.

66. Plaintiffs object to the application of the requirements of Rule 9 (j) of the North Carolina Rules of Civil Procedure on the basis that this Rule requires:

> "[a]ny complaint alleging medical malpractice by a health care provider pursuant to G. S. 90-21.11(2)a shall be dismissed unless:
> (1)   The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who has reasonably expected to qualify as an expert witness under rule 702 of the rules of evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
> (3)   The pleading alleges facts establishing negligence under the existing common-law doctrine of *res ipsa loquitur*.

67. Without waiving the objections raised to Rule 9 (j), and specifically relying upon the same, Plaintiffs assert that the medical care and all medical records pertaining to the alleged negligence that are available to the Plaintiffs after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 and is who is willing to testify that the care did not comply with the applicable standard of care.

11

68. This pleading alleges facts establishing breaches of common-law duties against a manufacturer who does not qualify as a medical care provider as defined under G.S. 90-21.11(2)a and, therefore, certification of compliance with Rule 9 (j) is not required.

69. In addition, the facts as alleged in this complaint establish negligence under the existing doctrine of *res ipsa loquitor*. In simplest terms, this doctrine is defined as facts which allows a jury to infer negligence from the circumstances of an accident, even without direct evidence of wrongdoing.

70. The actions which led to the injury of Plaintiff Kathleen Burkinshaw were completely in control of Defendant BSC, acting by and through NATALIE CROMER, the authorized representative in the room and operating the computer equipment which directly controlled the BSC spinal cord stimulator. Under the facts as alleged, compliance with Rule 9 (j) is not required.

## DAMAGES

71. As a direct and proximate result of the acts and/or omissions of the Defendants, as alleged herein, Plaintiff Kathleen Burkinshaw was permanently injured.

72. As a direct and proximate result of the acts and/or omissions of the Defendants, as alleged herein, Plaintiff Matthew Birkenshaw has been permanently injured.

73. The damages herein exceed Twenty-Five Thousand Dollars ($25,000.00) for each cause of action and as to each Plaintiff.

74. Defendants are liable for all legal damages sustained.

12

WHEREFORE, Plaintiffs respectfully pray this Court for the following relief:

1. That Plaintiffs have and recover of Defendant BSC damages on the First Claim for Relief, in an amount to be determined, which amount shall be proven at the trial of this matter, but in no event less than $25,000.00;

2. That Plaintiffs have and recover of Defendant NATALIE CROMER damages on the Second Claim for Relief, in an amount to be determined, which amount shall be proven at the trial of this matter, but in no event less than $25,000.00;

3. That Plaintiffs have and recover of Defendant BSC damages on the Third Claim for Relief, in an amount to be determined which amount shall be proven at the trial of this matter, but in no event less than $25,000.00;

4. That Plaintiffs have and recover of Defendant NATALIE CROMER damages on the Fourth Claim for Relief, in an amount to be determined which amount shall be proven at the trial of this matter, but in no event less than $25,000.00;

5. That Plaintiffs have and recover of Defendants damages on the Fifth Claim for Relief, in an amount to be determined which amount shall be proven at the trial of this matter, but in no event less than $25,000.00;

6. That Plaintiffs be awarded punitive damages as determined by this court;

7. That the cost of this action be taxed against the Defendants, including pre-judgment interest pursuant to N.C. Gen. Stat. § 24-5 as allowed by law;

8. That this matter be tried by a Jury;

9. For such other and further relief to which Plaintiffs may be entitled under the allegations set forth herein or as proven at trial; and,

13

10.    For such other and further relief as the Court may deem just and proper.

This the 15th day of ____May____, 2026.

Robert B. Newkirk, III
Attorney for Plaintiffs
NC Bar No. 16471
Newkirk Law Office
PO Box 2536
Cornelius, NC 28031
704-892-5898
704-892-5633(fax)
robert@newkirklaw.net

14

# EXHIBIT 1

Electronically Filed Date: 5/15/2026 6:09 PM Mecklenburg County Clerk of Superior Court

# TOLLING AGREEMENT

## DEFINITIONS

"Defendant" means Boston Scientific Corporation.

"Plaintiffs" mean Kathleen and Matt Burkinshaw, residents of Mecklenburg County, North Carolina.

"Claim" means Plaintiff's right or cause of action against Defendant with respect to Plaintiff's Spinal Cord Stimulator implanted on or around February 21, 2022 by Dr. James North regarding an incident that occurred on March 7, 2022.

"Effective Date" means the date of execution of this Agreement in full by counsel for Defendant and Plaintiffs.

In order to permit the Plaintiffs and Defendant time to review medical records and evaluate the allegations relating to the Claim, it is agreed as follows:

## AGREEMENT

1. Plaintiffs and Defendant agree, by and through their undersigned counsel, that any and all applicable statutes of limitations and repose are tolled with respect to the filing of a Complaint against Defendant asserting the Claim for a period of one hundred and eighty (180) days from the Effective Date of this Agreement.

2. This Agreement may be terminated prior to its expiration by Plaintiff or Defendants upon thirty (30) days advance written notice to counsel for the other party. The effect of such termination shall be the same as if the Agreement expired or terminated according to its original terms on the effective date of said termination. The written notice required by this paragraph shall be provided by facsimile or electronic mail and regular U.S. Mail to the undersigned attorneys

3. This Agreement shall not resurrect nor be construed to resurrect any claim for which the limitations periods within which to bring a civil action against Defendant, pursuant to any and all applicable statutes of limitations and repose, expired on or before the effective date of this Agreement.

4. The parties agree that neither the statements reflected in this Agreement nor the existence thereof shall be used as evidence or otherwise against any party in any lawsuit, claim and/or proceeding involving Defendant and Plaintiffs, except to enforce its provisions.

5. It is specifically understood that Defendant does not waive or release any defenses, objections, or arguments, including but not limited to, any statute of limitations and/or repose defenses which could have been asserted prior to the Effective Date of this Agreement, or any objection to lack of personal jurisdiction.

6. Plaintiffs specifically acknowledge that this Agreement cannot and will not be construed to indicate in any way that Defendant will not defend any complaint that Plaintiffs may file against Defendant on the merits.

1

7. The parties hereto agree and stipulate that this Agreement may be amended and/or extended only by express written agreement between the undersigned. Said amendments and/or extensions shall become effective only upon the date which said amendments and/or extensions have been executed in full by counsel for the parties to this Agreement.

8. Defendant and Plaintiffs herein agree that this Agreement is valid and enforceable under state and federal law and that they have been authorized to enter this Agreement on behalf of their respective client(s).

Counsel signing this Agreement represent that they have the authority of their clients to enter into this Agreement.

Agreed to:

_____
Robert Newkirk, III, Esq.
Newkirk Law Offices

Attorney for Plaintiffs Kathleen and
Matt Burkinshaw

Dated: __2/21/25__

Agreed to:

_____
Rachelle V. Anderson, Esq.
Nelson Mullins Riley & Scarborough LLP

Attorney for Defendant Boston Scientific Corporation

Dated: __2/21/25__

2

# EXHIBIT 2

**Robert B Newkirk III**

| | |
|---|---|
| **From:** | Rachelle Anderson <rachelle.anderson@nelsonmullins.com> |
| **Sent:** | Tuesday, August 19, 2025 2:08 PM |
| **To:** | Robert B Newkirk III |
| **Cc:** | Amy Tomsheck |
| **Subject:** | Re: Burkinshaw |

Agreed with below. Thanks,

Rachelle Anderson

**From:** Robert B Newkirk III <robert@newkirklaw.net>
**Sent:** Tuesday, August 19, 2025 12:37:06 PM
**To:** Rachelle Anderson <rachelle.anderson@nelsonmullins.com>
**Cc:** Amy Tomsheck <amy@newkirklaw.net>
**Subject:** RE: Burkinshaw

Rachelle,

For the sake of clarity, this email will confirm that the parties, through their respective counsel, have agreed to extend the tolling agreement, executed on February 21,2025 and set to expire on August 20, 2025, by ninety (90) days through November 18, 2025. Based on the original tolling agreement, the statute of limitations date following the expiration of the extended tolling period will be December 2, 2025.

Your agreement to the extension has already been communicated. Please advise if you have any issues with the dates as calculated.

Regards,

Robert B. Newkirk, III
Newkirk Law Office
PO Box 2536
Cornelius, NC  28031
(P) 704-892-5898
(F) 704-892-5633
Email: robert@newkirklaw.net



**NEWKIRK**
LAW OFFICE, PA

**From:** Rachelle Anderson <rachelle.anderson@nelsonmullins.com>
**Sent:** Tuesday, August 19, 2025 1:21 PM

1

# EXHIBIT 3

# Robert B Newkirk III

| | |
|---|---|
| **From:** | Robert B Newkirk III |
| **Sent:** | Friday, November 14, 2025 2:03 PM |
| **To:** | Rachelle Anderson |
| **Cc:** | Amy Tomsheck |
| **Subject:** | Burkinshaw |

Hello Rachelle,

Our extended tolling agreement is set to expire next week on Tuesday, November 18, 2025.

My file shows that we sent pertinent medical records and a demand letter on August 8, 2025, to which I have received neither confirmation of receipt nor a response.

Please advise if your client wishes to engage in negotiations on this claim. If not, I am prepared to file a complaint prior to the extended statute of limitations date of December 2, 2025, unless other tolling arrangements are made.

I am traveling on Monday, November 17, 2025, but will have access to email or can be reached on my cell at 704.408.8294.

Thank you in advance for your attention.

Robert B. Newkirk, III
Newkirk Law Office
PO Box 2536
Cornelius, NC 28031
(P) 704-892-5898
(F) 704-892-5633
Email: robert@newkirklaw.net



1

# Robert B Newkirk III

| | |
|---|---|
| **From:** | Rachelle Anderson <rachelle.anderson@nelsonmullins.com> |
| **Sent:** | Monday, November 17, 2025 1:19 PM |
| **To:** | Robert B Newkirk III |
| **Cc:** | Amy Tomsheck |
| **Subject:** | RE: Burkinshaw |

Hi Robert – In light of our discussion this morning, we have agreed to extend the tolling agreement for a period of six (6) months. Please write back and confirm your agreement with the calculation of the dates in light of this agreement:

- Tolling will then expire: **May 18, 2026.**
- Statute of limitations will expire: **June 1, 2026.**

Of course, I'm happy to continue our conversation once you've had the opportunity to discuss with your client. Thanks, Rachelle



RACHELLE V. ANDERSON  PARTNER
rachelle.anderson@nelsonmullins.com

1600 UTICA AVENUE SOUTH | SUITE 600
MINNEAPOLIS, MN 55416
T 612.464.7631   F 612.255.0739
NELSONMULLINS.COM   VCARD   VIEW BIO

**From:** Rachelle Anderson <rachelle.anderson@nelsonmullins.com>
**Sent:** Tuesday, August 19, 2025 1:08 PM
**To:** Robert B Newkirk III <robert@newkirklaw.net>
**Cc:** Amy Tomsheck <amy@newkirklaw.net>
**Subject:** Re: Burkinshaw

Agreed with below. Thanks,

Rachelle Anderson

**From:** Robert B Newkirk III <robert@newkirklaw.net>
**Sent:** Tuesday, August 19, 2025 12:37:06 PM
**To:** Rachelle Anderson <rachelle.anderson@nelsonmullins.com>
**Cc:** Amy Tomsheck <amy@newkirklaw.net>
**Subject:** RE: Burkinshaw

Rachelle,

1